IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

SUZANNE WILGUS,     :
           :
   Plaintiff,    :   K17C-07-032 JJC
           :   In and for Kent County
   v.      :
           :
BAYHEALTH MEDICAL   :
CENTER, INC.,     :
           :
   Defendant.   :

## **ORDER**

Submitted: December 4, 2018
Decided: December 17, 2018

**AND NOW TO WIT**, this 17th day of December, 2018, upon consideration of the record and the briefing by the parties**, IT APPEARS THAT**:

1. In August 2018, Plaintiff Suzanne Wilgus (hereinafter "Ms. Wilgus") tried an employment discrimination case against Defendant Bayhealth Medical Center, Inc. (hereinafter "Bayhealth") before a jury. Ms. Wilgus claimed Bayhealth violated Delaware's Persons With Disabilities Employment Protections Act (hereinafter "DEPA")[1] because Bayhealth terminated her after refusing to provide a reasonable accommodation based on her record of a disability. The jury found that Bayhealth violated DEPA and awarded Ms. Wilgus $196,285.28 in compensatory damages and $100,000 in punitive damages. Bayhealth now files a motion renewing its motion for judgment as a matter of law made at the close of Ms. Wilgus's case-

---

[1] 19 *Del. C.* § 720 *et seq.*

in-chief. In the alternative, Bayhealth seeks a new trial pursuant to Superior Court Civil Rule 59. The Court recognizes the standards for both motions and will apply them.

2. The parties stipulated prior to trial that federal law, namely the American with Disabilities Act as Amended (hereinafter the "ADA"),[2] provides the legal standards that control this DEPA claim.[3] DEPA parallels the ADA and also incorporates changes to the ADA by recognizing that any "higher or more comprehensive obligations established by otherwise applicable federal . . . enactments may be considered."[4]

3. In large part, Bayhealth's legal arguments have been addressed (1) in the Court's written summary judgment decision issued prior to trial and (2) in the Court's oral rulings during trial. Bayhealth raises five issues in the current motion that the Court will address through references to its prior rulings where appropriate.

4. First, Bayhealth argues, as a matter of law and of evidentiary sufficiency, that Ms. Wilgus did not suffer a disability as defined by DEPA. Bayhealth cites two federal cases for the premise that "a temporary, non-chronic impairment of short duration is not a disability covered under the ADA."[5] In this regard, this and other case law cited by Bayhealth either preexisted relevant

---

[2] 42 U.S.C. § 12101 *et seq* (2009).
[3] *See Testerman v. Chrysler*, 1999 WL 820934, at *11 (D. Del. Dec. 30, 1997) (recognizing this for the purposes of evaluating state law claims of disability discrimination under 19 *Del. C.* § 720, courts have utilized the same legal standards and framework established by the federal courts for actions under the ADA); s*ee also Wilgus v. Bayhealth*, 2018 WL 3559258, at *2 (Del. Super. Jul 23, 2018) (describing DEPA's incorporation of the ADA's standards for interpreting DEPA).
[4] 19 *Del. C.* § 721(b).
[5] *See McFarlan v. Ivy Hill*, 675 F.3d 266, 274 (3d. Cir. 2002) (plaintiff's temporary lifting restrictions which were removed four months after imposed was a temporary non-chronic impairment), *and Koller v. Riley*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (certain impairments that are not covered under the ADA include "cancer, HIV-AIDS, epilepsy, diabetes, multiple sclerosis, amputated and partially amputated limbs, post-traumatic stress disorder, intellectual and developmental disabilities-not minor, transitory impairments, except if of such a severe nature that one could not avoid considering them").

2

amendments to the ADA that became effective in 2009, or were limited to claims made under the actual impairment prong of the definition of disability.

5. DEPA defines a "person with a disability" to include a person who (1) has a physical or mental impairment which substantially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment.[6] The "record of disability" prong of the definition of disability was at issue in this case.[7] At trial, the Court cited the evidence of record and its reasoning for denying Bayhealth's motion for judgment as a matter of law.[8] The evidence presented at trial was sufficient to support a reasonable jury's finding that Ms. Wilgus had a record of disability. This evidence included her approximately 180 days of missed work, significant back surgery, two notes from her treating doctor placing her on "total disability," recognition of her significant impairment in her disability insurance documentation, and her testimony regarding her injuries' severe impact on several major life activities. Contrary to Bayhealth's argument, this evidence was admissible and properly considered by the fact finder.

6. Second, Bayhealth challenges the sufficiency of the evidence for the jury to have awarded punitive damages. After considering the parties' arguments at the prayer conference, the Court recited the evidence of record it found sufficient to justify a reasonable jury's finding that Bayhealth recklessly disregarded the rights guaranteed by DEPA.[9] Bayhealth's primary post-trial argument relies on the testimony of its employees that professed their lack of ill will or reckless disregard for Ms. Wilgus's rights when Bayhealth terminated her rather than (1) accommodate

---

[6] 19 *Del. C.* § 722(4).

[7] *See Wilgus*, 2018 WL 3559258, at *3 (discussing the differences in the three prongs and the standards for claims involving a "record of disability").

[8] *See* Trial Tr. Vol. C, 78-84, Aug. 29, 2018 (explaining that whether or not Ms. Wilgus's six-month impairment was sufficiently severe to constitute a disability under DEPA was an issue for the jury to decide).

[9] Prayer Conference Tr., 93-112, Aug. 30, 2018.

3

her request to use a back-brace, or (2) at a minimum engage in an interactive process with her. In other words, they testified regarding Bayhealth's subjective state of mind. The Court regularly instructs juries that they are free to infer a party's mental state based upon the circumstances. Here, after proper instruction, the jury's assessment of punitive damages was supported by a significant quantum of evidence suggesting Bayhealth terminated Ms. Wilgus without engaging in any interactive process or providing her with a very modest and reasonable accommodation. The evidence sufficiently supported a finding that Bayhealth (1) knew its obligations in this case, and (2) consciously disregarded those obligations to an extent rising to the level of recklessness.

7. Furthermore, the Court properly instructed the jury on the law regarding punitive damages. DEPA provides for potential recovery of punitive damages,[10] subject to the requirements of Title VII of the Civil Rights Act of 1964, including its cap on punitive damages.[11] The Court instructed the jury using the Third Circuit Court of Appeal's pattern jury instructions, which consistent with the ADA and DEPA, provide for punitive damages for conduct involving either malice or reckless indifference.[12] There was sufficient evidence at trial to support a reasonable jury's finding that Bayhealth acted with reckless indifference to Ms. Wilgus's rights under DEPA. In this motion, Bayhealth offers no new argument convincing the Court that it misapprehended the law or the facts. Finally, notwithstanding the Court's ruling

---

[10] 19 *Del. C.* § 715(1)c.; *See also* 19 *Del.C.* § 727 (providing that remedies for a violation of DEPA are available as permitted under Subchapter II of Chapter 7 of Title 19, Delaware Code wherein private causes of action are provided for in 19 *Del. C.* §715 ).

[11] 42 U.S.C. § 1981a.

[12] *See* Third Cir. Pattern Jury Instructions for Employment Claims under the ADA 9.4.2 (recognizing that where a plaintiff claims a defendant's acts were done with malice or reckless indifference to plaintiff's rights under the ADA, a jury may award punitive damages), see *also Kolstad v. American Dental Ass'n*, 527 U.S. 526, 536 (1999) (recognizing that to be liable in punitive damages under the ADA, the "employer must discriminate in the face of a perceived risk that actions will violate federal law").

4

that the evidence at trial was sufficient to support a finding of reckless disregard, Bayhealth specifically requested that the malice alternative in the pattern instruction be retained in the instruction.[13] Bayhealth cannot assert prejudice because the reference to malice was left in the jury instruction solely at its request.

8. Third, Bayhealth argues that the Court improperly instructed the jury regarding whether work was a major life activity and that a new trial is therefore warranted. Bayhealth's argument is without merit. Nothing in the ADA, as amended in 2009, requires a plaintiff to prove that he or she cannot perform a broad range of jobs in order for there to be a substantial impairment of the major life activity of work. In recognition of the amendments to the ADA, the Third Circuit Court of Appeals' pattern jury instructions do not include such language.[14] In any event, Bayhealth requested language referencing a broad range of jobs as opposed to Ms. Wilgus's actual job. Without objection by Ms. Wilgus, the Court included the language in the instruction that Bayhealth complains was not. Furthermore, at Bayhealth's request, the instructions identified the range of jobs as that of "registered nurse," as opposed to Ms. Wilgus's specific job position - a neonatal intensive care nurse. The Court again defaulted to the Third Circuit pattern instruction for ADA claims with the adjustments requested by Bayhealth.[15]

---

[13] Bayhealth objected to the punitive damages instruction. When the Court overruled the objection, *Bayhealth* requested that a reference to malice be retained in the instruction.

[14] *See* 3d. Cir. Pattern Jury Instructions for Employment Claims under the ADA, 9.2.1 (recognizing that the "ADA Amendments Act of 2008 specifically lists 'working' as a major life activity, and imposes no special showing on 'working' as distinct from other life activities. Nothing in the Act requires the plaintiff to prove an inability to perform a broad range of jobs, as had been required [before the Amendment] . . . Accordingly, the Instruction contains no special provision or limitation on proof of working as a major life activity").

[15] 3d Cir. Pattern Jury Instructions for Employment Claims under the ADA, 9.2.1.

9.	Fourth, Bayhealth argues that a "special circumstance" instruction[16] was appropriate because Bayhealth had a policy that provided it handle requests for reasonable accommodations in compliance with the ADA. In other words, its policy was to follow the law. Bayhealth introduced the policy into evidence and argued its importance to the jury. That policy, however, was not a disability neutral policy as such is contemplated under the ADA.[17] The Court reviewed the cases cited by Bayhealth, heard arguments, and issued an oral decision during the prayer conference.[18] Those reasons for not including a "special circumstance" instruction remain correct.

10.	Fifth, Bayhealth raised for the first time in its Reply Brief an argument that the evidence established conclusively that Ms. Wilgus could not perform the essential functions of her employment while using the back-brace. This argument ignores the substantial evidence that supported the jury's findings to the contrary. Namely, the uncontroverted evidence at trial established that she could perform all "physical demand functions" listed in her job description. Her only established limitation at the time of her planned return was that she was restricted in squatting. The evidence sufficiently established that squatting was not a required physical function of her job. Moreover, Bayhealth's argument that wearing a very modestly sized back-brace, that was admitted into evidence for the jury to view, posed a sanitary risk. The jury was free to consider that the modestly sized back-brace would have fit under Ms. Wilgus's scrubs or other clothing and would not have caused such risks. Judgment as a matter of law or a new trial are not appropriate on this basis as well.

---

[16] *See* Third Cir. Pattern Jury Instructions for Employment Claims under the ADA, § 9.1.3 (discussing a "special circumstance" instruction in the context of seniority plans, which in contrast to the policy at issue in this case, are disability neutral policies).
[17] Prayer Conference Tr., 70-80, Aug. 30, 2018.
[18] *Id.*

**NOW THEREFORE**, for the reasons cited, Defendant Bayhealth's motion for judgment as a matter of law, or in the alternative for a new trial is **DENIED**.

**IT IS SO ORDERED.**

<u>/s/Jeffrey J Clark</u>
Judge